# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| GEORGE W. BOWERS )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>NORTH AMERICAN COMPANY )<br>FOR LIFE AND HEALTH )<br>INSURANCE, )<br>)<br>   Defendant. )<br>) | CIVIL ACTION FILE<br>NO. 17-CV-00044-CDL<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES

As provided by Fed. R. Civ. P. 15(a), Plaintiff, George W. Bowers, states the following amended claims for relief:

## THE PARTIES, JURISDICTION AND VENUE

1.

Plaintiff, George W. Bowers, is a resident of Hart County, Georgia.

2.

Defendant, North American Company For Life and Health Insurance ("North American"), is a foreign insurance corporation which is believed to be incorporated in the State of Iowa. As set out in Plaintiff's original Complaint filed on February 1, 2017, North American conducts business in the State of Georgia.

1

3.

On March 9, 2017, North American, through its counsel of record, executed and served its wavier of service of Plaintiff's original Complaint in this action.

4.

On March 7, 2017, North American filed and served its Notice of Removal of this action from the Superior Court of Hart County, Georgia, to this Honorable Court.

5.

On March 10, 2017, North American filed and served a stipulation extending the time for it to "answer or otherwise respond" to Plaintiff's Complaint through April 13, 2017. North American recently requested additional time to respond to Plaintiff's Complaint.

6.

North American is personally subject to the jurisdiction of this Court. However, the issue of this Court's subject matter jurisdiction remains unresolved.

7.

Venue is appropriate in this Court, if this Court has subject matter jurisdiction.

**FACTUAL ALLEGATIONS**

8.

North American is believed to be the successor in interest to Amoco Life Insurance Company ("Amoco").

9.

On February 16, 1987, Plaintiff took out what was identified by Amoco as an "adjustable life insurance" policy, number 62783028271 (the "Policy") on the life of his wife, Martha J. Bowers. According to a document Amoco provided Plaintiff at the time the Policy was taken out, entitled "Statement of Policy Cost and Benefit Information," the Policy provided for a death benefit of $100,000.00. The annual premium on the Policy was stated in that document to be $750.00. A true and correct copy of the Statement of Policy Cost and Benefit Information is attached hereto as Exhibit "A" and by this reference, incorporated into and made a part of this Amended Complaint.

10.

Adjustable life insurance policies are believed to allow persons insured, or the owners of the policy, to manipulate the terms of coverage such as the periods of coverage, the premium, and the amount of coverage, depending on circumstances that develop over the life of the policy.

11.

Adjustable life insurance policies incorporate an interest bearing fund or a cash value.

12.

The Policy incorporated a cash value component.

13.

Neither Amoco nor North American has never provided Plaintiff with a copy of any actual life insurance policy covering the life of his wife. Therefore, Plaintiff cannot allege a more particular statement of his claims at this time.

14.

Plaintiff, through counsel, has requested that North American provide him with a copy of any actual Policy of life insurance on his wife.

15.

Despite requests from Plaintiff's counsel, and a signed authorization from Plaintiff, North American has failed to produce a copy of any Policy.

16.

According to the Statement of Policy and Benefit Information, Plaintiff was the named beneficiary of the Policy.

17.

According to the Statement of Policy and Benefit Information, Plaintiff's wife was designated as the owner of the Policy.

18.

On November 6, 1991, Plaintiff executed a document which appeared to change the ownership of the Policy from Plaintiff's wife to Plaintiff. A true and correct copy of the change of ownership document is attached hereto as Exhibit "B" and by this reference, incorporated into and made a part of this Amended Complaint.

19.

According to the Statement of Policy Cost and Benefit Information provided Plaintiff by Amoco, the Policy required a fixed annual premium of $750.00.

20.

A document that is part of the Statement of Policy Cost and Benefits Information, entitled "Annual Display of Premium Insurance Coverage" confirms that the premium required over the entire life of the Policy was $750.00 annually.

21.

Another document entitled "Projection of Policy Values" dated February 21, 2013 confirmed that the annual premium for the Policy was $750.00 and that the "specified amount" of the Policy at that time was $172, 000.00. A true and correct

copy of that document is attached as Exhibit "C" and by this reference is incorporated into and made a part of this Amended Complaint.

22.

Plaintiff has never done anything to change the amount of coverage provided by the Policy or to otherwise change the original terms of coverage.

23.

Although the Statement of Policy Cost and Benefit Information called for an annual premium of $750.00, it developed that Plaintiff was actually charged substantially more than that amount to maintain coverage. For example, Plaintiff was actually charged and paid premiums of $750.00 on February 4, 2013, April 23, 2013, June 10, 2013, September 12, 2013 and November 25, 2013.

24.

Plaintiff paid the all premiums charged by North American on the Policy through 2013.

25.

Although Plaintiff had paid and North American received and accepted a premium payment in the amount of $750.00 on December 3, 2013, on December 16, 2013, North American sent Plaintiff a "Grace Notice" which stated that if an additional premium of $100.00 was not paid by February 15, 2014, the Policy would terminate. A true and correct copy of that notice is attached to this Amended

Complaint as Exhibit "D" and by the reference incorporated into and made a part of this Amended Complaint.

26.

Although the annual premium on the Policy was set by North American to have been $750.00, Plaintiff was sent a number of other Grace Notices prior to the December 2, 2013 notice and had paid the various amounts required by those notices.

27.

On February 19, 2014, Plaintiff was mailed a "lapse notice" by North American stating that coverage under the Policy had terminated and was no longer in effect. A true and correct copy of that notice is attached to this Amended Complaint as Exhibit "E" and by this reference, incorporated into and made a part of this Amended Complaint.

28.

In early March, 2014, Plaintiff was admitted to AnMed Health in Anderson, South Carolina with severe abdominal pain. Plaintiff remained hospitalized there until April 3, 2014, with multiple medical issues, including surgery to have his gallbladder removed, and renal failure for which Plaintiff underwent hemodialysis.

29.

Plaintiff was discharged from AnMed on April 3, 2014. However, Plaintiff was readmitted to AnMed on April 4, 2014 for hypertension, tachycardia and blood in his stool.

30.

Because of Plaintiff's debilitated medical condition, he did not become immediately aware of any purported lapse in coverage under the Policy.

31.

By the beginning of 2014, Plaintiff had paid much more in premiums than the annual premium of $750.00 quoted in the Statement of Policy Cost and Benefit Information, and elsewhere.

32.

By the beginning of 2014, the Policy is believed to have generated a substantial cash value component.

33.

According to the "Statement of Policy Cost and Benefit Information" the Policy's projected cash value at the time the Policy was declared by North American, on February 19, 2014, to have lapsed, was approximately $40,000.00. Thus, there was more than enough cash value to pay any lawful premium due on or before February 16, 2014, if in fact, any premium was actually due on the Policy.

34.

Likewise, there appears to have been sufficient cash value to loan Plaintiff any lawful premium due in February, 2014, or before, if necessary.

35.

North American took no action to notify Plaintiff, or otherwise arrange to have any lawful premium due on February 16, 2014 paid out of the cash value of the Policy, or to otherwise loan the amount of the premium to Plaintiff.

36.

North American never came forward with any notice to Plaintiff that the Policy had a cash value.

37.

On October 2, 2014, Mrs. Bowers died.

38.

When Plaintiff made application to North American for the death benefits afforded by the Policy, the application was denied on the basis that the Policy had lapsed.

39.

North American has never undertaken to pay Plaintiff the cash value of the Policy after it declared the Policy had lapsed.

40.

When counsel for Plaintiff inquired of North American about the Policy, he was advised in January, 2017, that the Policy did not have any cash value at the time it was cancelled. No explanation was provided for that representation. A true and correct copy of that document is attached to this Amended Complaint as Exhibit "F" and by this reference, incorporated into and made a part of this Amended Complaint.

### PLAINTIFF'S FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT

41.

The Policy amounted to a contract between Plaintiff and Defendant. In exchange for the payment of an annual premium of $750.00, North American promised that upon the death of Plaintiff's wife it would pay Plaintiff the coverage afforded by the Policy. North American also promised that the insurance coverage purchased by Plaintiff would generate cash value.

42.

North American may be in breach of the Policy by not paying Plaintiff the benefits due him under the Policy, as its beneficiary, upon his wife's death.

43.

North American may also be in breach of the Policy by not paying any lawful premium due in February, 2014, or at any other time, from the Policy's cash value, or for not having loaned Plaintiff an amount adequate to pay any such premiums from the Policy's cash value.

44.

North American may also be in breach of the Policy by actually charging premiums in excess of the quoted annual premium of $750.00 at the time the Policy was taken out in 1987.

### **PLAINTIFF'S SECOND CLAIM FOR RELIEF**
### **IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING**

45.

There exists an implied covenant of good faith and fair dealing in every contract in Georgia.

46.

The Statement of Policy and Benefits Information provided Plaintiff at the time he took out the Policy plainly states that the Policy generated a cash value. According to that document, at the time of the death of the insured, the Policy would have accumulated a cash value of approximately $40,000.00.

47.

Defendant may have breached its covenant of good faith and fair dealing if it failed to advise Plaintiff of the availability of cash value or loan value to pay premiums lawfully due on the Policy, or if it failed to pay a premium lawfully due from the cash value or loan value of the Policy, or if it overcharged Plaintiff with premiums on the Policy and then declared that the policy had lapsed when all of the premiums charged Plaintiff were not paid.

### PLAINTIFF'S THIRD CLAIM FOR RELIEF
### FRAUD AND DECEIT

48.

North American is may be liable to Plaintiff for having misrepresented certain material facts and for having failed to disclose other material facts.

49.

Specifically, North American knowingly and intentionally represented to Plaintiff at the time the Policy was taken out, that the annual premium on the Policy would be $750.00. North American also knowingly and intentionally represented to Plaintiff that the Policy would accumulate a cash value. (*See* Exhibit "A").

50.

North American's representation at the time the Policy was taken out that the annual premium on the Policy was $750.00, and its later confirmation of that

fact to Plaintiff, were apparently false because North American has charged Plaintiff with payments substantially in excess of that amount.

51.

Likewise, North American's representation that the Policy would accumulate a cash value was apparently false.

52.

In taking out the Policy, Plaintiff justifiably relied on North American's representation in its Statement of Policy Cost and Benefit Information that the annual premium on the Policy would be $750.00. In fact, the amount of the premium to be paid for the Policy coverage was the consideration Plaintiff agreed to and did provide in exchange for the Policy.

53.

Plaintiff also justifiably relied on North American's representation that the Policy would accumulate a cash value.

54.

Plaintiff was damaged, and North American benefitted, when North American unilaterally increased the premium on the Policy and then cancelled the Policy, or declared that it had lapsed, due to the purported failure of Plaintiff to pay the increased premiums.

55.

North American failed to disclose the accumulated cash value of the Policy to Plaintiff at the time it terminated the Policy. North American also failed to pay any premium due on the Policy from its cash value. Alternatively, North American failed to have loaned Plaintiff an amount to pay any lawful renewal premium due on the Policy before it declared the Policy had lapsed.

56.

If the Policy was lawfully terminated due to any failure to pay a premium lawfully due, Plaintiff may have nonetheless been damaged by North American's failure to disclose and failure to pay over the cash value of the Policy to Plaintiff after his wife's death.

57.

If the Policy actually had a cash value at the time of the death of the insured in October, 2014, North American obviously knew that fact, and obviously withheld that fact from Plaintiff.

58.

If the Policy does not have a cash value, as North American now represents, Plaintiff was obviously misled by North American's representation that it did, and by providing a chart which showed the accumulated cash value over the life of the Policy. (*See* Ex. "A").

59.

North American's failure to disclose the cash value of the Policy to Plaintiff, and its failure to pay those specific funds over to Plaintiff if the Policy had, in fact, lapsed, may have amounted to a fraud carried out by North American upon Plaintiff.

### PLAINTIFF'S FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

60.

North American's retention of any cash value of the Policy after it terminated coverage under the Policy further amounts to unjust enrichment and conversion by North American of specific funds belonging to Plaintiff.

61.

North American has unjustly benefitted by its retention of any cash value of the Policy.

### PLAINTIFF'S FIFTH CLAIM FOR RELIEF
### PUNITIVE DAMAGES

62.

North American may be liable to Plaintiff for punitive damages for fraud and deceit if the clear and convincing evidence establishes that it overcharged

Plaintiff for premiums on the Policy and then declared the Policy to have lapsed for non-payment of those premiums.

63.

North American may be liable to Plaintiff for punitive damages upon a determination by clear and convincing evidence that North American knowingly and intentionally failed to disclose the cash value of the Policy to Plaintiff, and retained those specific funds without paying them over to Plaintiff, and without paying the premium on the Policy.

64.

Any such findings would amount to a specific intent to cause harm under Georgia law.

### PLAINTIFF'S SIXTH CLAIM FOR RELIEF
### EXPENSES OF LITIGATION

65.

In the event it is found that Defendant has been stubbornly litigious, or has acted in bad faith, or has caused Plaintiff unnecessary trouble and expense, Plaintiff will seek a recovery for his expenses of litigation, including reasonable attorney's fees as allowed by O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff, demands the following relief:

1. That Plaintiff recover a verdict for compensatory damage for any breach of contract by North American, for any fraud carried out by

16

      North American upon Plaintiff, for any unjust enrichment obtained by North American for having converted specific funds belonging to Plaintiff and for any other legal wrongs which may be shown by the evidence.

2. That Plaintiff recover a verdict for punitive damages in an amount determined by the jury to be sufficient to punish North American, or to deter it from repeating any intentional misconduct;

3. That Plaintiff recover his attorney's fees and expenses of this litigation, if the evidence should authorize such an award;

4. That Plaintiff have any and all further relief that may be just, proper and equitable under the circumstances; and

5. That Plaintiff be granted a trial by jury.

Dated: April 17, 2017.

                                              Restfully submitted,

                                              <u>/s/ James L. Ford, Sr.</u>
                                              James L. Ford, Sr.
                                              Georgia State Bar No. 268050
                                              *Attorney for Plaintiff*

JAMES LEE FORD, P.C.
A Professional Corporation
6111 Peachtree Dunwoody Road
Building G, Suite 100
Atlanta, GA 30328
Telephone: (678) 281-8750

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| GEORGE W. BOWERS, )<br>  )<br>  Plaintiff, )<br>  )<br>v. )<br>  )<br>NORTH AMERICAN COMPANY )<br>FOR LIFE AND HEALTH )<br>INSURANCE, )<br>  )<br>  Defendant. )<br>  ) | CIVIL ACTION FILE<br>NO. 17-CV-00044-CDL |

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading was filed using the CM/ECF system, which will automatically provide notice to the following attorney of record by electronic means:

> Jennifer Noland Ratham
> Smith Moore Leatherwood, LLP
> Regions Plaza, Suite 2300
> 1180 West Peachtree Street
> Atlanta, GA 30309

Dated: April 17, 2017.

                                        Respectfully Submitted:


                                        /s/ James L. Ford, Sr.
                                        James L. Ford, Sr.
                                        Georgia Bar No.: 268050
                                        *Attorneys for Plaintiff*